UNITED STATES DISTRICT COURT
for the
SOUTHERN DISTRICT OF GEORGIA
(AUGUSTA DIVISION)

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>GEORGE HEFFERNAN,<br>　　　　　　　　　Defendant. | CIVIL ACTION NO:<br>**CV101-141**<br>COMPLAINT FOR INJUNCTIVE AND OTHER EQUITABLE RELIEF, AND FOR CIVIL MONETARY PENALTIES UNDER THE COMMODITY EXCHANGE ACT, AS AMENDED, 7 U.S.C. §§ 1, *et seq.* |

## I. SUMMARY

1.　　Defendant George Heffernan ("Defendant" or "Heffernan") offers trading advice and services to customers and prospective customers relating to commodity futures trading.

2.　　On September 6, 2000, Plaintiff U.S. Commodity Futures Trading Commission ("Commission"), the independent federal agency charged with enforcing the Commodity Exchange Act, as amended, 7 U.S.C. §§1 *et seq.* ("Act"), issued an order, filing and simultaneously settling, an administrative proceeding against Heffernan, CFTC Docket No. 00-29 ("Order").

3.　　The Commission's Order contained findings, among others, that Heffernan had employed a scheme to defraud a client, engaged in a course of business that operated as a fraud

upon a client while acting as a commodity trading advisor ("CTA"), in violation of Section 4o of the Act, and advertised in a manner that employed a scheme to defraud clients and prospective clients while acting as a CTA, in violation of Section 4.41(a) of the Commission's Regulations, 17 C.F.R. §4.41(a) (2000).

4. The Order required Heffernan, among other things, to cease and desist from those violations, and to comply with undertakings to avoid similar misconduct in the future.

5. Nevertheless, since at least October 2000, Heffernan has repeatedly violated, and continues to violate, the Act, Regulations and Order by engaging in fraudulent solicitation of customers, failing to include appropriate risk disclosures and disclaimers regarding hypothetical trading and financial gain, and implying that the CFTC has endorsed his trading system.

6. Accordingly, pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2000), the Commission brings this action to enjoin the Defendant's unlawful acts and practices and to compel his compliance with the Act, Regulations and Order. In addition, the Commission seeks a civil monetary penalty and such equitable relief as this Court may deem necessary or appropriate, including disgorgement of Defendant's ill-gotten gains.

## II. JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2000), which provides that whenever it shall appear to the Commission that any person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of the Act or any rule, regulation, or order promulgated thereunder, the Commission may bring an action in the proper District Court of the United States against such person to enjoin such practice, or to enforce compliance with the Act, or any rule, regulation or order thereunder.

8. Venue properly lies with this Court pursuant to Section 6c(e) of the Act, 7 U.S.C. § 13a-1(e), because the Defendant is found in, inhabits, or transacts business in the Southern District of Georgia, and the acts and practices in violation of the Act have occurred within this District, among other places.

9. Unless restrained and enjoined by this Court, the Defendant is likely to engage in the acts and practices alleged in this Complaint or in similar acts and practices, as described more fully below.

## III. THE PARTIES

10. **Plaintiff U.S. Commodity Futures Trading Commission** is the independent federal regulatory agency charged with the administration and enforcement of the Act, as amended, 7 U.S.C. §§ 1 *et seq.* (2000), and the Regulations promulgated thereunder, 17 C.F.R. §§ 1.1-190.10 (2000). The Commission is located at 1155 21st Street, NW, Washington, D.C. 20581.

11. **Defendant George Heffernan,** an individual, resides at 608 Fox Hunt Lane, Evans, Georgia 30809. He has never been registered with the Commission in any capacity.

## IV. FACTUAL BACKGROUND

**The Commission's Cease and Desist Order of September 6, 2000**

12. From June 1999 onwards, Heffernan has offered for sale through his Internet web page www.accutrader.com (i) a commodity futures day trading technique known as the "Accutrader S&P Day Trading Technique" ("Technique"), which consists of a small trading manual outlining Heffernan's system of trading, and (ii) a commodities day trading instructional course known as the "Accutrader Day Trading School" ("Course"), which consists of a manual and eight one-hour telephone sessions with Heffernan. Starting no later than April 2000,

3

Heffernan also began to sell subscriptions to an Internet voice streaming program that enables the service's clients to listen to Defendant's trading advice. Heffernan claimed that he was giving the advice while he purportedly applied his trading technique to live market conditions ("Live Trading Room").

13. Prior to September 6, 2000, Defendant's web site contained the following misrepresentations:

- claims that the Technique was 82%-85% accurate, when Heffernan had no appropriate basis for making such claims;

- a table purporting to display successful results of trading the Technique, together with representations that the Accutrader system had achieved, for example, 59 winning trades and 14 losing trades in the past 30 days, although Defendant had done little or no actual trading using the Technique;

- a claim that trading profits based on using the Technique, after slippage and commissions, were $12,570.00 per contract, with a maximum draw-down of $500, where Defendant had no actual trading history to back up that claim.

14. Based on those misrepresentations, the Commission entered an Order by consent on September 6, 2000 finding that Heffernan had (a) made material misrepresentations and omitted material facts in connection with futures transactions, in violation of §§ 4b(a)(i) and (iii) of the Act, 7 U.S.C. §6(b)(a)(i) and (iii) (hereafter "§4b(a)(i) and (iii) of the Act"); (b) employed a scheme to defraud a client and engaged in a course of business that operated as a fraud upon a client, while acting as a Commodity Trading Advisor, in violation of §4*o*(1)(A) and (B) of the Act, 7 U.S.C. §6*o* (2000) (hereafter "§4*o*(1)(A) and (B) of the Act"); and (c) advertised in a manner that employed a scheme to defraud clients and prospective clients while acting as a CTA,

4

Commission Regulation 4.41(a), 17 C.F.R. §4.41(a) (2000) (hereafter "Regulation 4.41(a)"). By violating the Order, Heffernan has violated Section 6c of the Act.

15. The Order required Heffernan to cease and desist from violating Sections 4b(a)(i) and (iii) and 4o(1)(A) and (B) of the Act, and Commission Regulation 4.41(a).

16. The Order also required that Heffernan comply with his undertakings embodied in the Order and his Offer of Settlement that he, among other things:

   a. Not misrepresent, expressly or by implication (i) the performance, profits or results achieved by, or the results that can be achieved by, users, including him/herself, of any commodity futures or options trading system or advisory service; and (ii) the risks associated with trading pursuant to any commodity futures or options trading system or advisory service.

   b. Not present the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest unless such performance is accompanied by the following statement, as required by 17 C.F.R. § 4.41(b):

   > **Hypothetical or simulated performance results have certain inherent limitations. Unlike an actual performance record, simulated results do not represent actual trading. Also, since the trades have not actually been executed, the results may have under- or over-compensated for the impact, if any, of certain market factors, such as lack of liquidity. Simulated trading programs in general are also subject to the fact that they are designed with the benefit of hindsight. No representation is being made that any account will or is likely to achieve profits or losses similar to those shown.**

>In doing so, Heffernan shall clearly identify those hypothetical or simulated performance results which were based, in whole or in part, on hypothetical trading results; [and]
>
>c. Not make any representation of financial benefits associated with any commodity futures or options trading system or advisory service without first disclosing, prominently and conspicuously, that futures trading involves high risks with the potential for substantial losses.

17. The Order further noted that Defendant's conduct warranted assessment of a civil monetary penalty. The Commission waived the assessment of any such penalty based on sworn financial statements submitted by Defendant which indicated his inability to pay a civil monetary penalty.

18. Shortly before the Commission entered the Order, Heffernan took down his web site, and gave the appearance of being in compliance with the Order, as well as the Act and Regulations.

**Defendant's Activities Following the Issuance of the Order**

19. Beginning no later than October 2000, Defendant restored his Internet web site www.accutrader.com, which, along with his letters to customers, promotional materials and advertisements, again contained several misrepresentations and omissions.

20. Additionally, since at least August 2001, Heffernan has operated an Internet web site located at www.logitechtrading.com, using the name "Logitech Trading" to market and sell a commodity futures day trading technique under the name "Logitech Day Trading Technique," a commodity day trading instructional course under the name "Logitech Day Trading School," and

purported "real time" trading advice via an Internet voice streaming program known as "Logitech Live Real Time Day Trading." Notably, the descriptions of these three products are identical to their counterparts on Heffernan's Accutrader website, as outlined in paragraph 12. The Logitech Trading and the Accutrader websites contain the same or similar misrepresentations and omissions.

### Misrepresentations that Heffernan Traded His Own System

21. Specifically, Heffernan's statements on his Accutrader and Logitech Trading web sites falsely suggested that he took a market position in all of the trades he recommended in the Live Trading Room, when, in fact, he did not. These misrepresentations include the following statements, or words to that effect:

- "With a password, you can enter this service and hear George Heffernan think out loud as he day trades."

- "This service gives you the ability to look over an experienced day trader's shoulder as he trades real time"

- "[Heffernan] will give the actual entry price, profit targets and stop losses that he will be placing electronically with his broker."

- "George will trade until he is up one or two winning trades and then quit for the day. If he is in a losing position at 11:30, then he will continue to trade until he is back even and then quit for the day."

22. Similarly, in a promotional letter dated May 8, 2001, Heffernan falsely suggested through a series of misrepresentations that he personally took a market position in the trades he recommended in the Live Trading Room, when in fact he did not. These misrepresentations include, but are not limited to:

7

- "I am the only person I know of that actually offers a trading service where you can see me apply and trade my technique."
- "I am trading e-minis instead of the big S&P because I get better fills in the e-mini with the electronic trading."

(A "fill" is the price at which an order is filled by a broker (or electronically) in the competitive marketplace.)

23. The statements in Paragraphs 21 and 22 above represent that Heffernan was actually trading for himself in accordance with the recommendations he made in the "Live" Trading Room. In fact, however, Heffernan rarely made the trades he recommended, and between early January 2001 and early May 2001, placed no trades with a broker at all.

### Misrepresentations about Profitability

24. In a letter to a customer dated November 24, 2000, Heffernan claimed that the Technique yielded profitable trades a high percentage of the time. Specifically, Heffernan gave percentages indicating how likely it was that particular types or timing of trades, as identified in the Technique, would be profitable, and how many times a day the opportunity to make those profitable trades would be likely to arise, as follows:

- "90% accurate approximately 1 trade per day"
- "80% to 85% accurate approximately 8 trades per day"
- "60% to 70% accurate approximately 12 trades per day"
- "60% to 70% accurate approximately 1 trade per day"

25. In a letter to a customer dated February 13, 2001, Defendant again falsely promoted the profitability and accuracy of his system through the improper guarantee that a

8

particular type or timing of a trade identified by his Technique would succeed, stating: "I even taught you a trade that is 100% accurate...."

26. In a promotional letter dated May 8, 2001, Defendant further touted the supposed profitability of his trading system using misrepresentations about the trading results he purportedly achieved through the use of that system. These statements include:

- "I have never had a losing day in the live trading room on the Accutrader trades."

- "The results are documented and recorded and can be proven with time & sales data."

- "The total including all of the above trades taken in the trading room is also doing very good. The trading room has had 372 winning trades and 31 losing trades since I started the trading room."

- "In other words it is possible to earn $500 per day or $10,000 per month for part time work of a couple hours a day."

27. In several advertisements placed in the publication *Investors Business Daily* between November 2000 and June 2001, Heffernan again made false statements relating to his purported trading results, e.g.: "372 Winning Trades, 3 Losing Trades, Last 120 Trading Days."

28. In fact, however, despite the representations Heffernan made, as described in Paragraphs 24 through 27 above, his business records fail to support the supposed profitability or "accuracy" of his trades, whether real or hypothetical. Further, Heffernan's personal futures trading between September 1999 and January 2001 resulted in aggregate net losses of over $20,000. In 1999, he also managed a customer account that he was instructed to trade pursuant

9

to the Technique. That trading also resulted in a net loss. In short, Heffernan has no basis to claim that his futures trading is profitable or that the Technique yields "accurate" trades.

### Failure to Make Required Disclosures

29.     The Commission's Regulations and Order obliged Heffernan to make specific disclosures to customers and prospective customers when the trading results he supplied were based on hypothetical or simulated trading, rather than actual market trading. The Order also required him to make specific disclosures, prominently and conspicuously, that futures trading involves high risks with the potential for substantial losses before he made representations of financial benefit associated with his trading service.

30.     Such hypothetical trading and risk disclosures were omitted from the promotional materials, correspondence with customers and *Investors Business Daily* advertisements discussed in Paragraphs 24 through 27 above.

### Misrepresentation about CFTC Endorsement of Business

31.     While acting as a CTA, Heffernan mailed letters to a client dated January 18, 2001 and February 13, 2001 falsely suggesting that the CFTC had endorsed his web site and products. These statements include:

- "My services have been reviewed by the CFTC and my local attorney."
- "I have a file 5 inches thick with correspondence from the CFTC, my attorney and myself."
- "The CFTC did check out all web sites that offer trading techniques, methods or schools for futures trading."

32. The Commission never endorsed Heffernan's web site and promotional materials in any way. Indeed, the Commission staff reviewed those materials and found violations of the Act and Regulations which led to the issuance of the Commission's Order.

**Current Activities**

33. Defendant continues to maintain the websites www.accutrader.com and www.logitechtrading.com, and continues to solicit new customers via these web sites for all of his products and services, including both the Logitech Trading and Accutrader techniques, courses and live trading room subscriptions.

### V. VIOLATIONS OF THE COMMODITY EXCHANGE ACT

### COUNT I

### VIOLATION OF SECTION 4*o*(1) OF THE ACT, 7 U.S.C. § 6*o*(1) AND COMMISSION REGULATION 4.41(a), 17 C.F.R. § 4.41(a): FRAUD BY A COMMODITY TRADING ADVISOR

34. Paragraphs 1 through 33 are realleged and incorporated herein by reference.

35. Section 1a(6) of the Act, 7 U.S.C. § 1a(6) defines a CTA as any person who, *inter alia*, for compensation or profit, engages in the business of advising others, either directly or through publications, writings, or electronic media, as to the value of or the advisability of trading in any contract of sale of a commodity for future delivery made or to be made on or subject to the rules of a contract market.

36. Section 4*o*(1) of the Act makes it unlawful for a CTA, by use of the mails or any means or instrumentality of interstate commerce, directly or indirectly (A) to employ any device, scheme, or artifice to defraud any client or participant or prospective client or participant; or (B) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.

37. Commission Regulation 4.41(a) makes it unlawful for a CTA, or any principal thereof, to advertise in a manner which: (1) employs any device, scheme or artifice to defraud any client or prospective client; or (2) involves any transaction, practice or course of business which operates as a fraud or deceit upon any client or any prospective client.

38. Through the conduct described in Paragraphs 21 through 28 above, Defendant, while acting as a CTA, by using the mails or other means or instrumentalities of interstate commerce (i) employed devices, schemes or artifices to defraud clients or prospective clients, and (ii) engaged in transactions, practices or courses of business which operated as a fraud or deceit upon clients or prospective clients, in violation of section 4$o$(1) of the Act.

39. Through the conduct described in paragraphs 21 through 28 above, Defendant, while acting as a CTA, included fraudulent representations in his advertising and promotional material in violation of section 4.41(a) of the Commission's Regulations.

40. Each fraudulent misrepresentation or omission made by Heffernan in his web sites, advertising and promotional material, including those specifically alleged herein, constitutes a separate and distinct violation of Section 4$o$ of the Act and Regulation 4.41(a).

### COUNT II

### VIOLATION OF COMMISSION REGULATION 4.41(b), 17 C.F.R. § 4.41(b): FAILURE TO PROVIDE CAUTIONARY STATEMENT REGARDING LIMITATIONS OF HYPOTHETICAL TRADING RESULTS

41. Paragraphs 1 through 40 are realleged and incorporated herein by reference.

42. Regulation 4.41(b) makes it unlawful for any person to present the performance of any simulated or hypothetical commodity interest account, transaction in a commodity interest or series of transactions in a commodity interest of a commodity pool operator, CTA, or any

principal thereof, unless such performance is accompanied by a prescribed cautionary statement concerning the limitations of simulated or hypothetical trading results.

43. Through the conduct described in Paragraphs 24 through 30 above, Defendant, while acting as a CTA, presented the performance of simulated and hypothetical commodity interest accounts without including the required cautionary statement, in violation of Section 4.41(b) of the Regulations.

44. Each failure to include the required hypothetical disclaimer, including those specifically alleged herein, constitutes a separate and distinct violation of Regulation 4.41(b).

## COUNT III

### VIOLATION OF COMMISSION REGULATION 4.16, 17 C.F.R. § 4.16
### PROHIBITED REPRESENTATIONS

45. Paragraphs 1 through 44 are realleged and incorporated herein by reference.

46. Regulation 4.16, 17 C.F.R. § 4.16 (2000), makes it unlawful for any Commodity pool operator, commodity trading advisor, principal thereof or person who solicits therefor to represent or imply in any manner whatsoever that such commodity pool operator or commodity trading advisor has been sponsored, recommended or approved, or that its abilities or qualifications have in any respect been passed upon, by the Commission, the Federal government or any agency thereof.

47. Through the conduct described in Paragraphs 31 and 32 above, Defendant, while acting as a CTA, implied that he been sponsored, recommended or approved, or that his abilities or qualifications had been passed upon by the Commission, in violation of Regulation 4.16, 17 C.F.R. § 4.16.

48. Each statement implying that the CFTC sponsored, recommended or approved Heffernan, his web site or other services or products, including those specifically alleged herein, constitutes a separate and distinct violation of Regulation 4.16.

## COUNT IV

## VIOLATION OF THE COMMISSION'S ORDER OF SEPTEMBER 6, 2000 AND SECTION 6c OF THE ACT

49. The allegations contained in paragraphs 1 through 48 are realleged and incorporated herein by reference.

50. On September 6, 2000, the Commission issued an Order pursuant to §6(c) and 6(d) of the Act, 7 U.S.C. §§9, 13b and15 (2000). Section VI, paragraph 1 of the Order directs George Heffernan d/b/a Accutrader, Inc. and Accutrader Day Trading School, to cease and desist from violating Sections 4b(a)(i) - (iii) and 4o(1)(A) and (B) of the Act and Section 4.41(a) of the Commission's Regulations.

51. Through the conduct described in Paragraphs 21 through 28 above, Defendant has violated Section VI, paragraph 1 of the Order, and Section 6c of the Act.

52. The Order also requires Heffernan to comply with the undertakings outlined in Section VI, paragraphs 3(a)(i), (b) and (c) of the Order, as more fully described in Paragraph 16 above.

53. Through the conduct described in Paragraphs 21 through 30 above, Defendant has violated the undertakings contained in Section VI, paragraphs 3(a)(i), (b) and (c) of the Order, and Section 6c of the Act.

54. Each act by Heffernan in violation of the Order, including those specifically alleged herein, constitutes a separate and distinct violation of Section 6c of the Act.

## VI. RELIEF REQUESTED

WHEREFORE, the Commission respectfully requests that this Court, as authorized by Section 6c of the Act, 7 U.S.C. § 13a-1, and pursuant to its own equitable powers, enter:

a) An order of permanent injunction prohibiting Defendant Heffernan from engaging in conduct violative of Sections 4o(1)(A) and (B), and Section 6c, 7 U.S.C. §§ 6o(1)(A) and (B), and 13a-1, and Commission Regulations 4.16 and 4.41(a), 17 C.F.R. §§ 4.16 and 4.41(a), and the Commission's September 6, 2000 Order;

b) An order directing that Defendant Heffernan make an accounting to both the court and the Commission of all assets and liabilities of Defendant and his commodity advisory business, together with all funds received from persons in connection with the provision of commodity futures or options related advice or services, and other items sold in connection with these products and services, including the names, addresses and telephone numbers of any such persons from whom he received such funds from September 7, 2000 to and including the date of such accounting;

c) An order directing Defendant Heffernan to disgorge all benefits received, directly or indirectly, from acts or practices that constitute violations of the Act, Regulations or Order, as described herein, to pay interest thereon from the date of such violations, and to pay costs and fees as permitted by law;

d) An order directing the Defendant to pay a civil monetary penalty in the amount of not more than the higher of $120,000 per violation (or $110,000 for each violation that occurred after November 27, 1996 and before October 23, 2000) or triple the monetary gain to the Defendant for each violation of the Act or Regulations;

e) Such other and further equitable or remedial ancillary relief as the Court may deem appropriate.

Respectfully submitted,

_____
Heather Capell
Theodore Dowd   FL Bar #0458090
Michael Solinsky
Attorneys for Plaintiff
Commodity Futures Trading Commission
Three Lafayette Centre
1155 21st Street, NW
Washington, DC  20581
Tel:  (202) 418-5320
Fax: (202) 418-5531
   E-mail:	hcapell@cftc.gov;
		tdowd@cftc.gov
		msolinsky@cftc.gov


Local Counsel:
Ken Crowder
Assistant United States Attorney
One 10th Street Ste 530
Augusta, GA 30901
Tel: (706) 724-0517
Fax: (706)724-7728