ORIGINAL

U.S. DISTRICT COURT
AUGUSTA DIV.

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

2003 AUG -4 AM 8: 57

CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| COMMODITIES FUTURES TRADING COMMISSION, | * * * | |
| Plaintiff, | * * | |
| vs. | * * | CV101-141 |
| GEORGE HEFFERNAN, | * * | |
| Defendant. | * | |

**O R D E R**

On February 18, 2003, this Court granted the Commodity Futures Trading Commission ("the CFTC") partial summary judgment in the above-captioned case. Specifically, the Court found that Defendant George Heffernan ("Heffernan") violated (1) 7 U.S.C.A. § 6o(1)(A); (2) 17 C.F.R. § 4.41(a)(1); (3) 17 C.F.R. § 4.41(b); (4) 17 C.F.R. § 4.16; and (5) a September 2000 order of the CFTC. On April 21, 2003, a hearing was held on the question of the remedy for Heffernan's violations. The Court now addresses the appropriate redress for Heffernan's conduct.

DHB (36)

CCC:

AO 72A
(Rev.8/82)

## I. THE CFTC'S PROPOSED REMEDY

The CFTC seeks an Order granting the following relief: (1) disgorgement in the amount of $275,000;[1] (2) a civil monetary penalty in the amount of $600,000; (3) a permanent injunction prohibiting future violations of the Commodity Exchange Act; and (4) pre-judgment and post-judgment interest.[2] (Doc. No. 40 at 1.)

The CFTC proposes a disgorgement amount of $275,000 based on an admission by Heffernan:

> 71. During the period of June 1999 through October 2001 Heffernan's gross income from the sale of Accutrader products exceeded $275,000.
>
> **Response:** **Admitted.**

(Doc. No. 40 at Ex. 1 (Heffernan's Admission).) The request for admission covers June 1999 to October 2001, the time period the CFTC asserts Heffernan was committing

---

[1] Because the CFTC did not attempt to prove that Heffernan's schemes victimized any particular investor, it has not asked for a restitution amount. (Doc. No. 40 at 2-3.) Rather, it has chosen disgorgement of Heffernan's ill-gotten gains in order to deter future violations and deprive Heffernan the benefit of his fraud. (Id.)

[2] The CFTC states that it should be awarded pre-judgment interest on the civil monetary penalties. (Doc. No. 40 at 10-11.) The April 21, 2003 hearing sufficiently established that Heffernan will likely find it difficult to disgorge his ill-gotten gains and also pay the penalty I have assessed against him. Even the minimal penalty I have imposed would significantly increase with pre-judgment interest. Thus, I decline to award pre-judgment interest.

AO 72A (Rev.8/82)

violations. (Id. at 2.)

The CFTC also asserts that Heffernan should pay a $600,000 penalty. The CFTC's math is simple. It seeks to impose a $120,000 fine for each of five violations for a total of $600,000. The five violations are as follows:

1. Operation of the Accutrader Web site.

2. Placement of ads in numerous editions of *Futures* magazine.

3. Placement of ads in numerous editions of *Investors's Business Daily*.

4. Operation of the Logitech Web site.

5. Disbursement of numerous communications (primarily advertising emails and letters) to customers.

(Doc. No. 44 at 7.) The CFTC notes that the Court found in its Order that Heffernan had placed a total of 23 violative ads in *Futures* magazine and *Investor's Business Daily*. (Id. at 8.) The CFTC further maintains that the Court's Order pointed out that each advertisement also violated (a) the CFTC's consent order; (b) 7 U.S.C.A. § 6o(1)(A); (c) 17 C.F.R. § 4.41(a)(1); and (d) 17 C.F.R. § 4.41(b), which, if totaled individually, would be 92 violations amounting to approximately $10,000,000 in penalties. (Id. at 8.) Thus, the CFTC asserts that a penalty of $600,000 based on five violations is fair and appropriate. (Id.)

3

Finally, the CFTC maintains that 7 U.S.C.A. § 13a-1(b) allows this Court to issue a permanent injunction. In large measure, the CFTC has requested a permanent injunction because it believes Heffernan will repeat his violations. For example, the CFTC claims that Heffernan is running another Web site at www.indexanalysisservice.com which contains many of the same type violations that www.accutrader.com contained. (Id.) The CFTC further asserts that Heffernan is attempting to evade judicial and regulatory authority just as he did when he started www.logitech.com following the CFTC's investigation of www.accutrader.com. (Id.) The CFTC also claims that Heffernan's immediate violation of its September 6, 2000 order, its belief that Heffernan has flouted this Court's order of February 18, 2003, and the long-term nature of Heffernan's past violations establish that Heffernan will likely violate the Commodity Exchange Act and related regulations again. (Doc. No. 40 at 10.)

## II. ANALYSIS

### A. The Disgorgement Amount

"The purpose of disgorgement is not to compensate the victims of the fraud, but to deprive the wrongdoer of his

4

ill-gotten gain." SEC v. Blatt, 583 F.2d 1325, 1335 (5th Cir. 1978). Because disgorgement is remedial and not punitive, the "court's power to order disgorgement extends only to the amount with interest by which the defendant profited from his wrongdoing. Any further sum would constitute a penalty assessment." Id.

The Government has asked for disgorgement of $275,000. (Doc. No. 44 at 4.) The Government's figure is not arbitrary, but based on Heffernan's claims that he earned over $275,000 in gross profits from June 1999 through October 2001 from the sale of the Accutrader system and its products. (Id. at 4, Ex. 1 (Heffernan's Admission Responses).) Heffernan does not dispute the $275,000 amount, but contends that it "does not take into account substantial expenses." (Doc. No. 45 at 2.) Typically, disgorgement is actual profits plus interest. See Blatt, 583 F.2d at 1335 n.30. The problem, however, is that Heffernan has not provided any information on his actual expenditures, despite having an opportunity to do so at the April 21 hearing. Rather, he has simply stated that "he does not have $250,000 or any similar amount to pay." (Doc. No. 45 at 3.) This information, of course, does not aid me in either determining Heffernan's expenses or

5

discovering the whereabouts of the gross profits. Without any evidence of expenses or even an assertion as to what they might be, I conclude that the disgorgement figure presented by the CFTC represents the amount of Heffernan's ill-gotten gain. As a result, Heffernan shall disgorge $275,000. Heffernan is not required to pay pre-judgment interest on this amount. The Government, however, has a right to post-judgment interest on the disgorgement from the entry of judgment in this case.[3] 28 U.S.C.A. § 1961(a) (Supp. 2003) ("Interest **shall** be allowed on any money judgment in a civil case recovered in a district court.") (emphasis added); <u>Kaiser Aluminum & Chem. Corp. v. Bonjorno</u>, 494 U.S. 827, 835 (1990).

### B. The Penalty Amount

Title 7, section 13a-1 of the United States Code provides for fines of either $110,000 or $120,000 for each breach of the Commodity Exchange Act. 7 U.S.C.A. § 13a-1(d)(1) (1999); 17 C.F.R. § 143.8 (2002). Section 9a of the same title directs the CFTC to "consider the appropriateness of . . . [the] penalty to the gravity of

---

[3] <u>See</u> 28 U.S.C.A. § 1961 (1994 & Supp. 2003) (giving the applicable interest rate).

the violations." 7 U.S.C.A. § 9a(1). In addition, this Court "is cognizant of its duty to be realistic and not set a figure which is impossible for a defendant to comply with due to lack of monetary resources." CFTC v. Rosenberg, 85 F. Supp. 2d 424, 455 (D.N.J. 2000) (internal quotation marks omitted).

At the hearing held on April 21, 2003, Heffernan presented evidence that the value of his assets is approximately $3,398.08. (Def.'s Ex. 8.) In addition, Heffernan contends that he has unpaid medical bills. (Id. at Exs. 7,8.)

The CFTC has requested $120,000 per violation for five violations (see supra at 3), for a total of $600,000. (Doc. No. 44 at 7, 8.) While the CFTC has constrained its request for a monetary penalty to five violations, the evidence adduced at the hearing convinces me that Heffernan cannot pay this penalty amount. As a result, I will reduce Heffernan's fine to $25,000 for each of the five violations cited by the CFTC within this Order. Heffernan shall pay $125,000 as a civil monetary penalty, but he is not required to pay pre-judgment interest on that amount.

Heffernan shall pay post-judgment interest[4] on the penalty from the date of the entry of judgment in this case.

**C. The Permanent Injunction**

The CFTC contends that "the Court should impose a permanent injunction, enjoining Mr. Heffernan from violoating Section 4<u>o</u>(1) of the Act and Commission Regulation 4.16, 4.41(a)-(b), in addition to enjoining further violations of the Commission's Order." (Doc. No. 44 at 10. The CFTC further asserts that Heffernan's Web site located at www.indexanalysisservice.com, flouts this Court's February 18, 2003 Order. (<u>Id.</u>) The CFTC concludes that "[w]ithout an injunction in place, Mr. Heffernan is free to engage in the same illegal activities, placing members of the public at risk in the future." (<u>Id.</u>)

1. <u>Applicable Law</u>

"The Commodities Futures Trading Commission is authorized by 7 U.S.C.A. § 13a-1 to institute an action in federal district court whenever it appears that violations of any provision of the [Commodities Exchange] Act have

---

[4] <u>See</u> 28 U.S.C.A. § 1961 (1994 & Supp. 2003) (giving the applicable interest rate).

occurred. That section provides that upon a proper showing, the district court may issue a permanent or temporary injunction." CFTC v. Muller, 570 F.2d 1296, 1299-1300 (5th Cir. 1978)[5]; see also 7 U.S.C.A. § 13a-1(a), (b). In an action to enforce the requirements of a remedial statute, such as the Commodity Exchange Act ("the CEA"), a district court "has broad discretion to fashion appropriate relief." Muller, 570 F.2d at 1300.

The Courts that have considered the standard for issuing a permanent injunction to prohibit future violations of a remedial statute[6] have held that there must be (1) a showing that illegal activity has occurred and (2) a reasonable likelihood that the wrong will be repeated. Kelly v. Carr, 567 F. Supp. 831, 839-40 (W.D. Mich. 1983); Rosenberg, 85 F. Supp. 2d at 454 ("The District Courts also have jurisdiction to enter a permanent injunction 'upon a proper showing.' The legal standard for determining whether an injunction should issue is whether, once a

---

[5] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions that were handed down prior to the close of business on September 30, 1981.

[6] The Muller Court noted that there was an unresolved issue about the standard for issuing a permanent injunction to enjoin future violations. CFTC v. Muller, 570 F.2d 1296, 1300 (5th Cir. 1978). However, the court's dicta suggests that the standard I have utilized in this order is the one that the Eleventh Circuit would adopt. Id.

9

violation has been established, there is a reasonable likelihood of future violations.") (citation omitted); CFTC v. Morgan, Harris & Scott, Ltd., 484 F. Supp. 669, 676-77 (S.D.N.Y. 1979) ("Unlike private injunctive actions, which require a showing of irreparable harm or the lack of an adequate remedy at law, <u>statutory injunctive actions brought by the Commission</u> require merely that there is a reasonable likelihood of future violations of the law by the defendant.") (emphasis added).

Determining whether a future violation may occur involves consideration of the "totality of the circumstances." CFTC ex rel. Kelly v. Skorupskas, 605 F. Supp. 923, 942 (E.D. Mich. 1985). Thus, "various courts have . . . looked to [1] the nature of the past misconduct, [2] whether the defendant's business interests place him in a position where future violations are possible, [3] the persistence of the violating conduct, and [4] whether the defendant has maintained that his conduct was blameless to determine whether an injunction is appropriate." Rosenberg, 85 F. Supp. 2d at 454. Importantly, past misconduct "is highly suggestive of the likelihood of future violations." Id. (internal quotation marks omitted); Carr, 567 F. Supp. at 840. "The purported

10

cessation by defendants of their illegal activity does not necessarily eliminate the likelihood of future violations." Morgan, Harris & Scott, Ltd., 484 F. Supp. at 677.

2. Analysis

I have already determined that Heffernan committed violations of (1) the CEA, (2) CFTC regulations, and (3) a CFTC consent order. See CFTC v. Heffernan, 245 F. Supp. 2d 1276 (S.D. Ga. 2003). Thus, the CFTC has focused on the indicators supporting its contention that Heffernan will commit future violations. To determine whether a permanent injunction is appropriate, I examine the considerations set forth above. See supra § III.C.1.

The first factor to consider is the egregiousness of Heffernan's conduct. I have found that Heffernan violated § 4o(1) of the CEA and 17 C.F.R. § 4.41(a)(1) with scienter. Heffernan, 245 F. Supp. 2d at 1292-96. Thus, his conduct was, at least for these violations, not the result of mere negligence. The state of mind necessary for these violations suggests that Heffernan may commit future violations. See Rosenberg, 245 F. Supp. 2d at 454.

The second consideration is the extent to which Heffernan will have the opportunity to commit future

AO 72A
(Rev.8/82)

violations.  Heffernan's business interests put him in a position to violate the CEA and its supporting regulations. After the CFTC's September 6, 2000 consent order was issued and while this case was pending, Heffernan began construction of a Web site at www.indexanalysisservice.com.  This site is currently operational and contains plentiful evidence that Heffernan is hazarding another breach of the CEA.  Some statements from this site include the following:

1. "The Index Analysis Hedge Trading Method is the <u>traders holy grail</u>.  The Hedge Trading Method <u>does not have losses</u>."

2. "The accuracy of the support and resistance numbers is astonishing."

3. "Don't miss out on the excellent trading opportunities!  Subscribe today so that you will know the numbers where the market should bounce or break and increase the accuracy of your trading methods."

http://www.indexanalysisservice.com (emphasis added).  The nature of Heffernan's business activities place him in a position to commit future violations.

The final two considerations require me to determine (1) if Heffernan has demonstrated a persistence in committing violations and (2) whether he has accepted and understands that he broke the law.  Prior to the CFTC's filing of the complaint in this case, Heffernan and the

12

CFTC settled a dispute concerning alleged CEA violations, which resulted in a CFTC consent order. See <u>Heffernan</u>, 245 F. Supp. 2d at 1283 ("On September 6, 2000, the CFTC determined that Heffernan's Accutrader Web site contained several misleading representations. . . . The CFTC's cease-and-desist order instructed Heffernan to refrain from posting . . . misrepresentations on the Accutrader Web site."). Despite this agreement, the CFTC was forced to bring suit in an effort to compel Heffernan's compliance with its consent order and the commodities laws. Fairly viewed, Heffernan has persevered in his violations of the CEA and CFTC regulations.

Furthermore, and in spite of the consent order and an Order from this Court, Heffernan persists in his belief that he has done no wrong. In a letter dated April 17, 2003, Heffernan stated the following: "They [the CFTC] are saying that I am in violation of the settlement, when in fact I am in full compliance. They are trying to change the original meaning of settlement." (Letter of April 17, 2003 at 2.)[7] Heffernan further states that he and his family "have suffered enough at the hands of the CFTC."

---

[7] This letter was originally delivered to me as an <u>ex parte</u> communication. At the April 21, 2003 hearing, I made it available to the attorneys for both parties and had the letter placed in the record.

(Id. at 5.)  Heffernan has, in fact, requested that the CFTC pay all his legal expenses.  (Id.)  Heffernan's unwillingness to accept that he violated the CEA and its supporting regulations or the CFTC consent order leads me to believe that he will have no compunction about committing the same violations because he believes he has never broken the law.

The nature of Heffernan's past violations, his current business interests in his Web site at www.indexanalysisservice.com, his persistence in violating the commodities laws, and his refusal to believe that he has done anything wrong is sufficient evidence upon which to conclude that Heffernan will commit future violations. Thus, a permanent injunction is appropriate.

The CFTC has requested that I issue an injunction ordering Heffernan to obey the law, something the law itself already instructs Heffernan to do.  The Eleventh Circuit has held that injunctions this broad serve no purpose and should be avoided.  See Burton v. City of Belle Glade, 178 F.3d 1175, 1201 (11th Cir. 1999) (stating that because the plaintiffs sought "injunction would do no more than instruct the City to 'obey the law'", the injunction was not sufficiently specific and, thus, incapable of

14

enforcement). Rather, an injunction that is more specific is appropriate.

Because Heffernan's violations were committed, in large measure, through the operation of Internet Web sites, the following information <u>must</u> be placed prominently on any Web site or in any mailing or other readable material he or any agent may operate or publish related in <u>any</u> manner to commodities, the trading of commodities, futures contracts, or securities:

> "I have violated the Commodity Exchange Act, CFTC regulations, and a CFTC order. After being sued by the CFTC in federal court, I have been ordered to disgorge $275,000 in ill-gotten gains and pay $125,000 in civil monetary penalties for my illegal conduct. The order in my case was issued by the United States District Court for the Southern District of Georgia and can be found in volume 245 of the federal supplement beginning on page 1,276. My case number was CV 101-141."

This information shall be blocked in English and be the largest text on the Web site or in any mailing or other readable material. This information should also be in an <u>easily readable</u> font and be a different color from the background and all other text on the Web page or in the mailing or other readable material. <u>See</u> <u>Rolex Watch USA, Inc. v. Crowley</u>, 74 F.3d 716, 718-19 (6th Cir. 1996) (requiring a disclaimer to be placed with advertisements);

15

<u>United States v. Washington Mint, LLC</u>, No. 9901768 JRT/FLN, 2001 WL 1640073, at *6 (D. Minn. Sept. 5, 2001) (issuing a permanent injunction requiring the Washington Mint to publish a disclaimer informing the public that it is not affiliated with the United States government). If Heffernan fails to place this information on any Web site or in any mailing or other readable material that should contain it, he may be subject to contempt proceedings.

### III. CONCLUSION

For the aforementioned reasons, Heffernan shall (1) disgorge $275,000 with applicable post-judgment interest and (2) pay a civil monetary penalty of $125,000 with applicable post-judgment interest. Furthermore, Heffernan is **PERMANENTLY ENJOINED** and hereby compelled to post the information set forth in this order on any Web site, mailing, or other readable material that he or any agent uses or operates relating in <u>any</u> manner to commodities, the trading of commodities, futures contracts, or securities. The **CLERK** is **DIRECTED** to enter final judgment and to **CLOSE** this case. Costs are taxed against Heffernan.

**ORDER ENTERED** at Augusta, Georgia, this \_\_\_4/15\_\_\_ day of August 2003.

_____
CHIEF UNITED STATES DISTRICT JUDGE

17

UNITED STATES DISTRICT COURT
Southern District of Georgia

Case Number: 1:01-cv-00141
Date Served: August 4, 2003
Served By: Joseph A. Howell

Attorneys Served:

Kenneth D. Crowder, Esq.
Theodore J. Dowd, Esq.
Erin E. Powell, Esq.
Stephen E. Curry, Esq.

✓ Copy placed in Minutes
✓ Copy given to Judge
Publish
___ Copy given to Magistrate